CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 10 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JASON RICHARD-CHARLES CLEM, ) | |
| Petitioner, ) | Civil Action No. 7:09cv00015 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| GENE M. JOHNSON, ) | By: Samuel G. Wilson |
| Respondent. ) | United States District Judge |

A jury in the Circuit Court of Rockingham County found Petitioner Jason Richard-Charles Clem guilty of one count of capital murder and sentenced him to life imprisonment. After the Virginia courts denied his petition for habeas corpus, Clem filed a habeas petition in this court pursuant to 28 U.S.C. § 2254 raising five claims: first, that his counsel was ineffective at trial for failing to object, request a curative instruction, or move for a mistrial when the prosecutor stated that Clem planned to get away with murder; second, that his counsel was ineffective for failing to adequately challenge the prosecutor's statement on appeal; third, that the Circuit Court violated his due process rights by refusing to instruct the jury on the consequences of finding a defendant not guilty by reason of insanity ("an NGI finding"); fourth, that sentencing a juvenile to life in prison is cruel and unusual punishment; and fifth, that cumulative error violates his due process rights. Respondent has moved to dismiss all claims. The court finds that Clem is not entitled to relief on these claims, and accordingly grants Respondent's motion to dismiss.

I.

On March 8, 2004, Clem killed Robert Edward Lacy, Jr. in Cuzz's Family Restaurant ("Cuzz's") in Elkton, Virginia. Lacy had owned and operated Cuzz's and had employed Clem there. Clem was 16 years old at the time of the killing. Lacy bled to death at the scene after

suffering multiple stab wounds and blunt force injuries. Authorities found the restaurant's cash register open and empty. Clem told family members that evening that he had killed Lacy, and his parents brought him to the police station, where authorities arrested him. A Rockingham County grand jury indicted Clem for capital murder. According to the indictment, Clem "did unlawfully and feloniously, willfully and deliberately, with premeditation and malice aforethought kill and murder [Lacy] in the commission of robbery or attempted robbery." (Rockingham County Circuit Court File No. 1 at 1.)

During her opening statement at Clem's trial, Assistant Commonwealth's Attorney Marsha Garst told the jury that "the Commonwealth's evidence is going to show you . . . that the defendant Jason Clem is a man with a plan" and noted aspects of the crime that, according to the Commonwealth, required planning or "presence of mind." (May 9 Tr. 222-29.)[1] At the end of her opening statement, Garst admonished the jury that "you're going to have to make a decision ultimately in this case . . . . [as to] whether or not you're going to let Jason Clem get away with his plan today. That plan is to get away with murder." (May 9 Tr. 229.) Clem's trial counsel did not object to this statement.

In his opening statement, Lloyd Snook, co-counsel for the defense, also discussed Clem's

---

[1] According to the Commonwealth's evidence, Clem told a classmate prior to the killing that he wanted to "get" Lacy and "hit him over the head with something and rob him" and that he "knew the schedule of the waitresses [at Cuzz's] and who would be there when" (May 10 Tr. 41); Clem told a classmate on the day of the killing "[t]hat he was going to Puerto Rico and that he was going to do something bad to get on the news" (May 10 Tr. 20); morning-shift employees at Cuzz's left Lacy alone in the restaurant that afternoon at around 3:30 p.m. for a usual shift change; Clem answered the restaurant's phone at around 3:50 p.m. and told another employee that the restaurant would be closed for a few days; Clem tried to get a ride to the airport at around 4:11 p.m. that afternoon; and the bags Clem left at his mother's home later that evening contained $457.00 in cash, maps and flight schedules for Puerto Rico, a surveillance tape from the restaurant, as well as a hammer and a knife stained with Lacy's blood.

2

"plan." Snook told the jury that Clem planned to steal money from Lacy for an airline ticket to Puerto Rico, where he would become a marijuana farmer. Snook noted that this plan "sounds almost funny just to say it" and that "the plan kind of fell apart because the plan in fact isn't really much of a plan." (May 9 Tr. 233-35.) Snook acknowledged that "the evidence will be absolutely clear that Jason Clem in fact inflicted the mortal wounds on Bob Lacy," but stated that the evidence would support an NGI finding. (May 9 Tr. 236.)[2]

During her closing argument, Garst stated that "[w]e talked a lot about a man with a plan. I tell you today he has a plan. He wants to get away with murder and you will decide that, only you." (May 12 Tr. 30.) Clem's counsel did not object to this statement. In his closing argument, defense co-counsel John Hart stated that "This man didn't have a plan. It was a boy with an illusion" and asked the jury to find the defendant not guilty by reason of insanity. (May 9 Tr. 37.) In rebuttal, Garst told the jury:

> You have to decide whether Jason Clem knew right from wrong, whether he knew the character, nature and consequences of his acts. Ladies and gentlemen of the jury, why hide a crime if you don't know it's wrong? Ladies and gentlemen of the jury, why stand before you today and claim insanity? You'll have to make that decision. But the Commonwealth can tell you why. He wants to get away with murder.

(May 12 Tr. 40.) Clem's counsel did not object to this statement.

The Circuit Court instructed the jury on the elements of capital murder and stated that "[i]f you find from the evidence that the Commonwealth has proven beyond a reasonable doubt

---

[2]Defense counsel presented expert testimony that "at the time of the offense [Clem] was suffering from two severe mental disorders . . . a major depression with psychotic features which was superimposed on a more chronic depression of a couple of years duration and a dissociative disorder" and that "these mental disorders were so severe and incapacitating that [Clem] was unable to appreciate the quality and consequences of his actions." (May 11 Tr. 42.)

3

each of [these] elements . . . then you shall find the defendant guilty, unless you find the defendant not guilty by reason of insanity." (Rockingham County Circuit Court File No. 7 at 1141.) The Circuit Court instructed the jury that the defendant is presumed sane and that, to return an NGI finding, the jury must find that the defendant has proven by "the greater weight of the evidence" that, at the time of the crime, "because of a mental disease or defect he did not understand the nature, character or consequences of his act or he was unable to distinguish right from wrong." (Rockingham County Circuit Court File No. 7 at 1143-44.) The court refused two jury instructions proposed by the defense[3] that detailed the consequences of an NGI finding.[4]

---

[3]Defense counsel argued that an instruction on the consequences of an NGI finding was appropriate because Garst had "said something to the effect of don't let him get off scot free" during her opening statement. (May 11 Tr. 219.) In fact, a panel member, not Garst, stated during voir dire that an NGI finding allowed a person who killed for money "to get off scot[] free for it." (May 9 Tr. 114.) The Circuit Court granted defendant's motion to strike that panel member for cause, and cautioned Garst not to use the phrase "scot free" in her closing argument.

[4]The first proposed instruction stated: "If you find the defendant not guilty by reason of insanity, the Court shall commit him to the custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services. You are not to concern yourself with what may happen thereafter." (Rockingham County Circuit Court File No. 7 at 1073.) The second proposed instruction stated:

> If yo[u] find the defendant not guilty by reason of insanity, the defendant will be placed in the temporary custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services for further evaluation. Upon receipt of the a [sic] report from the Commissioner, the Court will hold a further hearing on the mental health of the defendant. At the conclusion of the hearing, the Court shall commit the defendant to the continued custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services if the Court finds that the defendant is mentally ill and in need of inpatient services. His commitment would be reviewed periodically by the Court. He would be in the custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services as long as the court determines that he his mentally ill and in need of inpatient services.

(Rockingham County Circuit Court File No. 7 at 1074.)

(May 10 Tr. 218-19; May 12 Tr. 7-9.) The jury found the defendant guilty of capital murder and fixed his punishment at imprisonment for life and a $100,000 fine. The court imposed a life sentence without the possibility of parole and a $100,000 fine.

On direct appeal to the Court of Appeals of Virginia, Clem claimed that the Circuit Court should have instructed the jury on the consequences of an NGI finding because, among other reasons, this instruction was necessary to correct Garst's statements about Clem's plan to get away with murder. The Court of Appeals held that it could not consider this argument because Clem's counsel had not objected to Garst's statements at trial, and the Court of Appeals refused his petition for appeal (Record No. 17-99-05-3, March 23, 2006). In his appeal to the Supreme Court of Virginia, Clem abandoned this reasoning. The Supreme Court of Virginia refused his petition for appeal (Record No. 060760, September 21, 2006), and the United States Supreme Court denied his petition for writ of certiorari on February 20, 2007, Clem v. Virginia, 127 S. Ct. 1301.

Clem filed a petition for habeas corpus in the Circuit Court of Rockingham County on September 25, 2007. Clem raised several claims, including: first, that his counsel was ineffective at trial because he did not object, request a curative instruction, or move for mistrial when the prosecutor stated that Clem planned to get away with murder; second, that his counsel was ineffective because he failed to adequately challenge the prosecutor's statement on appeal; third, that the court violated his due process rights by refusing to instruct the jury on the consequences of an NGI finding; fourth, that sentencing a juvenile convicted of capital murder to life in prison was cruel and unusual punishment; and fifth, that cumulative error violated his due process rights. The Circuit Court denied Clem's two ineffective assistance claims on the merits, and

dismissed his other claims under Slayton v. Parrigan, 205 S.E.2d 680 (1974) because Clem failed to properly raise them on direct appeal. The Supreme Court of Virginia refused Clem's petition for appeal in a summary order. (Record No. 080596, September 18, 2008). Clem raises essentially the same five claims in his instant § 2254 petition.

## II.

Clem's petition is governed by 28 U.S.C. § 2254 and Chapter 154 of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, 28 U.S.C. §§ 2261-66 ("AEDPA"). In almost all circumstances, petitioners under § 2254 must exhaust all available state court remedies before seeking relief in federal court. Id. § 2254(b). When the state courts have adjudicated the petitioner's habeas claims on the merits, Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000), AEDPA requires the federal court to defer to the state court's decision:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(b)(1). A state court adjudication is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than the [Supreme Court of the United States] has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably

6

applies clearly established federal law "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts." Id. at 413. It is insufficient that a state court applied federal law incorrectly; relief may be granted only if the application of federal law is unreasonable. Id. at 411. The state court's factual determinations are "presumed to be correct," and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Federal courts presume that, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same grounds." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

When a state court has expressly relied on an adequate and independent state procedural rule to deny relief on a claim (procedural default), that adequate and independent state procedural rule also bars federal review unless the petitioner shows either (1) cause and prejudice or (2) a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).[5] To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a

---

[5] "A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985)." McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007). Therefore, a violation of "firmly established and regularly followed state rules" is adequate to foreclose review. Lee v. Kemna, 534 U.S. 362, 375 (2002). "[W]henever a procedural rule is derived from state statutes and supreme court rules . . . the rule is necessarily 'firmly established.'" O'Dell v. Netherland, 95 F.3d 1214, 1241 (4th Cir. 1996), aff'd 521 U.S. 151 (1997).

constitutional magnitude. Id. at 488. A valid nondefaulted ineffective assistance of counsel claim can constitute cause and prejudice and, thereby, excuse a procedural default. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). The "miscarriage of justice" exception is a narrow exception to the cause requirement. A habeas petitioner falls within this narrow exception if he can demonstrate that a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. Murray, 477 U.S. at 496.

## A.

Clem argues that his counsel was ineffective at trial by failing to object, request a curative instruction, or move for mistrial when the prosecutor stated that Clem planned to get away with murder. The Circuit Court found that Clem had failed to establish either deficient performance or prejudice as to this claim. The court finds that the Circuit Court's decision is neither an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts, and accordingly dismisses this claim.

To demonstrate ineffective assistance of counsel, a petitioner must first show deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689. In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance, that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694.

8

The Circuit Court found that "in view of the appropriate nature of the Commonwealth's Attorney's challenged remarks . . . trial counsel's failure to challenge them by way of an objection, motion for mistrial, or motion for cautionary instruction did not amount to ineffective assistance under either prong of Strickland." Clem v. Johnson, CL07-00874, at 67. Clem claims that his counsel should have challenged these remarks in light of Shannon v. United States, 512 U.S. 573 (1994), a case concerning whether a federal district court must instruct the jury on the consequences of an NGI finding as a matter of general federal practice or under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247. Shannon provides that generally, "juries are not to consider the consequences of their verdicts . . . . The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." Id. at 579. Therefore, unless "a prosecutor states in the presence of the jury that a particular defendant would 'go free'" as a result of an NGI finding, a jury instruction on the consequences of an NGI finding is unnecessary. Id. at 587. Applying this logic to Clem's case, the Circuit Court could have reasonably concluded as it did, that Clem's counsel was not ineffective in failing to object, request a curative instruction, or move for a mistrial in response to the prosecutor's statements because, in context, these statements refer to Clem's plan to kill Lacy and escape detection, not any plan to go free as a result of an NGI finding. Therefore, the court finds that the Circuit Court's determination that counsel did not render ineffective assistance at trial is not an unreasonable application of clearly established federal law or an unreasonable determination of the facts, and accordingly dismisses this claim.

## B.

Clem claims that his counsel was ineffective on appeal because he failed to adequately

9

challenge the prosecutor's statements about his plan to get away with murder.[6] The Circuit Court found that Clem had established neither deficient performance nor prejudice under Strickland as to this claim "considering the insubstantial nature of the petitioner's defaulted substantive argument as well as the high improbability that the Court of Appeals would have . . . reverse[d] Clem's conviction" on this basis. Clem v. Johnson, CL07-00874, at 67. Like the preceding claim, this ineffective assistance claim is premised on Clem's argument that the challenged remarks were objectionable. This court has already determined that the Circuit Court could have reasonably concluded that they were not. Accordingly, the court dismisses Clem's claim of ineffective assistance on appeal for the same reasons it dismissed the preceding claim.[7]

## C.

Clem claims that the trial court violated his due process rights when it refused to instruct the jury on the consequences of an NGI finding despite the prosecutor's statement about his plan to get away with murder. The Circuit Court held that "[i]nsofar as the present allegation is deemed to raise any issue not advanced on direct appeal, Clem has procedurally defaulted on it

---

[6]On appeal, Clem's counsel argued that the court should have instructed the jury on the consequences of an NGI finding in order to correct the prosecutor's statements about Clem's plan to get away with murder. The Court of Appeals denied this claim because Clem's counsel had not objected to those statements at trial. In his instant habeas petition, Clem claims that his counsel was ineffective on appeal because he did not argue that the Court of Appeals must consider the merits of this issue despite counsel's failure to object in order "to attain the ends of justice" under Sup. Ct. R. 5A:18 ("[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except . . . to enable the Court of Appeals to attain the ends of justice.")

[7]To the extent that Clem argues that the Circuit Court did not appropriately construe Sup. Ct. R. 5A:18, the court cannot grant him habeas relief "because doing so would require [the federal court] to review a state court's application of state law – something that the habeas statute does not authorize." Larry v. Branker, 552 F.3d 356, 369 n.13 (4th Cir. 2009).

under Slayton." Clem raised this argument in his direct appeal to the Court of Appeals of Virginia, but abandoned it in his subsequent direct appeal to the Supreme Court of Virginia. Because Clem did not raise this argument in his direct appeal to the Supreme Court of Virginia, the claim is procedurally defaulted under Slayton.

Because Slayton is an independent and adequate state procedural rule that renders the claim procedurally defaulted in this court, Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006), this court cannot consider the claim unless Clem shows either cause for and prejudice from the procedural default or that failure to review the claim would result in a fundamental miscarriage of justice. Clem has shown neither cause and prejudice nor a fundamental miscarriage of justice. Accordingly, the court dismisses this claim.

### D.

Clem argues that sentencing a juvenile to life in prison is cruel and unusual punishment. The Circuit Court found that Clem had defaulted this claim under Slayton because he failed to raise it on appeal.

Because Slayton is an independent and adequate state procedural rule that renders the claim procedurally defaulted in this court, Vinson, 436 F.3d at 417, this court cannot consider the claim unless Clem shows either cause for and prejudice from the procedural default or that failure to review the claim would result in a fundamental miscarriage of justice. The court finds that the record establishes neither cause and prejudice nor a fundamental miscarriage of justice, and accordingly dismisses this claim.[8]

---

[8]Even if not procedurally defaulted, this claim fails because sentencing a juvenile to life imprisonment for capital murder is not cruel and unusual punishment. See United States v. Feemster, 483 F.3d 583, 588 (8th Cir. 2007) ("Although the execution of a juvenile is

11

### E.

Clem argues that cumulative error in his trial violates his due process rights. The court finds that Clem has made no case for error, much less cumulative error, and accordingly dismisses this claim.

### IV.

For the foregoing reasons, the court will grant Respondent's motion to dismiss.

**ENTER**: This 10th day of August, 2009.

/s/ _____
UNITED STATES DISTRICT JUDGE

---

impermissible under the Eighth and Fourteenth Amendments, sentencing a juvenile to life imprisonment is not."); United States v. Pete, 277 Fed. App'x 730, at *3 (9th Cir. 2008) (same); see also Sharikas v. Kelly, No. 1:07cv537, 2008 WL 6626950, at *2 (E.D. Va. Apr. 7, 2008) (finding that the logic of Roper v. Simmons, 543 U.S. 551 (2005), is not applicable to juveniles sentenced to life imprisonment).